```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
ZIM AMERICAN INTEGRATED SHIPPING                                 :
SERVICES CO., LLC,                                               :
                                                                 :
                                      Plaintiff,                 :    20-cv-4838 (LJL)
                                                                 :
                      -v-                                        :    OPINION AND ORDER
                                                                 :
SPORTSWEAR GROUP, LLC,                                           :
                                                                 :
                                      Defendants.                :
                                                                 :
-----------------------------------------------------------------:
                                                                 :
                                                                 X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/27/2021

LEWIS J. LIMAN, United States District Judge:

Defendant Sportswear Group, LLC ("Sportswear Group" or "Defendant") moves, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss the complaint against it for lack of subject matter jurisdiction. In the alternative, Defendant moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint against it for failure to state a claim upon which relief can be granted. Dkt. No. 12. For the following reasons, Defendant's motion to dismiss for failure to state a claim for relief is granted without prejudice.

## FACTUAL BACKGROUND

Plaintiff, Zim American Integrated Shipping Services Co., LLC ("Plaintiff" or "Zim"), as agent for Zim Integrated Shipping Services Ltd. and Seth Shipping (S) Ltd. ("Seth"), is a common carrier by water, *inter alia*, in the interstate and foreign commerce of the United States as defined in The Shipping Act of 1984, 46 U.S.C. § 40101 et seq., and was a common carrier for the benefit of Defendant Sportswear Group. Dkt. No. 1 ("Compl." or "Complaint") at 1. Defendant Sportswear Group, LLC ("Sportswear" or "Defendant") is a seller of women's

apparel.  Dkt. No. 13-1 ("Shaalo Decl.") ¶ 2.  Defendant purchased several shipments of goods from factories in Bangladesh.  *Id.*  The sales contracts obligated the suppliers ("shippers") to arrange for and pay for overseas carriage.  *Id.* ¶ 3.  The shippers fulfilled their obligations by arranging for carriage of cargo aboard a vessel owned or operated by Seth and issued bills of lading to the shippers for carriage of the goods from the ocean port at Chittagong, Bangladesh to the Port of New York.  *Id.*; Dkt. No. 13 at 2.[1]  In connection with its opposition to this motion, Plaintiff attaches two bills of lading: the "Zim Bill of Lading," at Dkt. No. 14-3, and the "Seth Bill of Lading," at Dkt. No. 14-2.  It is not clear from the Complaint or any of the materials on this record who were the parties to these bills of lading or how they relate to one-another or are different. The Seth Bill of Lading is in tiny print and mostly illegible.  Neither bill of lading appears to be executed by any party.

The negotiable bills of lading were drawn to the "order" of the Bangladeshi shipper's bank. Dkt. No. 13 at 2.  The bank would collect all relevant shipping documents and transmit those documents to Defendant's bank for payment by Defendant.  *Id*.  Upon payment by Defendant, the shipping documents would be released to Defendant.  *Id*.  When the shipment arrived at the Port of New York, Defendant would provide the original bills of lading to Plaintiff

---

[1] Neither the Complaint nor documents incorporated by reference spell out precisely the contractual relationships that were entered into by Seth, Zim, the shippers, and the Defendant. For purposes of stating the background of the case, the Court draws facts not only from the Complaint but from the briefs and affidavits submitted in connection with this motion.  However, in analyzing the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court considers only the allegations contained or incorporated by reference in the Complaint, which are accepted as true for purposes of the motion. *See Washington State Inv. Bd. v. Odebrecht S.A.*, 461 F. Supp. 3d 46, 60 (S.D.N.Y. 2020).  For purposes of the motion brought pursuant to 12(b)(1), the Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue" as well as "matters of which judicial notice may be taken." *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 272-73 (S.D.N.Y. 2018) (internal quotation marks and citations omitted).

and the goods would be delivered to a trucking company, "Rally Trucking," which was hired by Defendant to transport the cargo to Defendant's warehouse. Shaalo Decl. ¶ 5.

Plaintiff claims that it transported cargo for the benefit of Defendant during 2018-2019 in the foreign commerce of the United States. Compl. ¶ 6. Plaintiff states that "[s]uch transportation and services provided are evidenced by Zim's service contracts, bills of lading and/or freight bills, invoices, credit agreements and freight guarantees, the terms of which are incorporated herein [by reference]." *Id*. Plaintiff alleges that it has fulfilled its obligations pursuant to its contracts with Defendant, but that Defendant "has knowingly and willfully failed and refused to pay Zim the full amount due," and "[c]onsequently, Defendant is liable to Zim in the amount of $71,100.00, plus reasonable attorney fees and interest." *Id*. ¶¶ 8-9.

Although not detailed in the Complaint, from the parties' briefs on the instant motion it appears that Plaintiff's theory is that Rally Trucking failed to timely return to Plaintiff the empty shipping containers used to transport the cargo, resulting in damages. *See* Dkt. No. 13 at 5; Dkt. No. 14 at 4. Plaintiff argues that based on the terms of the bills of lading, which are maritime contracts of carriage, Defendant, as a "Merchant" so defined in the bills of lading,[2] is liable for all freight and related charges, including demurrage or detention of containers. *See* Dkt. No. 14 at 4. Plaintiff alleges that the "fair value of the ocean cargo carriage and/or detention and/or demurrage services provided by Plaintiff to Defendant is not less than $71,100.00." Compl. ¶ 18. Plaintiff alleges that Defendant has knowingly and willfully failed and refused to pay Plaintiff the full amount due for transportation and services provided. *Id*. ¶¶ 7-8, 13.

---

[2] The Zim Bill of Lading defines "Merchant" as "jointly and severally the shipper, the consignee, the holder and any assignee or endorsee of this Bill of Lading, and/or any one acting on behalf of such persons." Dkt. No. 14-3 at 1.

3

Plaintiff brings claims for money due under tariff and service contracts, breach of written contract, unjust enrichment, quantum meruit, account stated, and seeks attorney fees. Defendant moves to dismiss the Complaint on two grounds. First, Defendant argues that there is no federal admiralty subject matter jurisdiction over Plaintiff's claims. Second, Defendant argues that even if subject matter jurisdiction were to exist, Plaintiff fails to state a claim for which relief can be granted.

For the following reasons, the Court finds that it possesses subject matter jurisdiction, but holds that the Complaint fails to state a claim upon which relief may be granted.

## LEGAL STANDARD

Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'" *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)). Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party. *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001). However, where the jurisdictional challenge is fact-based, the defendant may "proffer[ ] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to

controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). In that case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno*, 932 F. Supp. at 95.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

### A.  Admiralty Jurisdiction

Section 1333(1) of Title 28 U.S.C. grants federal district courts jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). "This grant includes

5

jurisdiction over all contracts which relate to the navigation, business, or commerce of the sea." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 632 (2d Cir. 2016) (internal quotation marks and citation omitted). The "fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.'" *Sisson v. Ruby*, 497 U.S. 358, 367 (1990) (quoting *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674 (1982)). Admiralty jurisdiction does not depend on where the contract is made, *see Constructive Hands, Inc. v. Baker*, 446 F. Supp. 2d 88, 90 (N.D.N.Y. 2006), or on the status of the parties, *see Outbound Maritime Corp. v. P.T. Indonesian Consortium of Constr. Industries*, 575 F. Supp. 1222, 1223 (S.D.N.Y. 1983). Rather, whether a contract is a "maritime contract" supporting admiralty jurisdiction "depends upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." *Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading Inc.*, 697 F.3d. 59, 65 (2d Cir. 2012) (quoting *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004)). "In other words," the Court must ask "whether the 'principal objective' of the agreement is 'maritime commerce.'" *D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 886 F.3d 216, 223 (2d Cir. 2018) (quoting *Kirby*, 543 U.S. at 24); *see Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 347-48 (S.D.N.Y. 2013) ("A contract is maritime in nature when its 'primary objective is to accomplish the transportation of goods by sea' from a foreign port to a port in the United States.") (quoting *Kirby*, 543 U.S. at 24). "The Supreme Court has cautioned that this inquiry is 'conceptual' and not constrained by the location of contract performance of a vessel's involvement in the dispute." *D'Amico Dry Ltd.*, 886 F.3d at 223 (quoting *Kirby*, 543 U.S. at 24). The "contract's subject matter must be our focal point." *Fireman's Fund*, 822 F.3d at 632 (quoting *Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 312 (2d Cir. 2005)).

The parties do not dispute that an ocean bill of lading is a maritime contract in the sense that its "primary objective [wa]s to accomplish the transportation of goods by sea" from a foreign port to a port in the United States. *Nippon Yusen Kaisha*, 977 F. Supp. 2d at 347-48 (S.D.N.Y. 2013) (quoting *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004)); *see* Dkt. No. 13 at 4 ("Sportswear does not dispute than an ocean bill of lading is a maritime contract."); Dkt. No. 14 at 5-6. The primary objective of the bills of lading at issue was to accomplish the transportation of goods by sea from a foreign port in Bangladesh to the Port of New York. As such, the bills of lading constitute maritime contracts, over which there is admiralty jurisdiction. *See D'Amico Dry Ltd.*, 886 F.3d at 223. Defendant argues, instead, that Plaintiff has no claim under the ocean bills of lading, because the bills provided for "carriage of the Goods . . . only by sea," and that all parties' duties under the bills of lading were discharged at the time the goods were "delivered from the Carrier's sole custody to the Consignee." Dkt. No. 14-3 § 4; *see* Dkt. No. 13 at 4. Defendant argues there "is no allegation that the freight was not paid for carriage from Bangladesh to New York," and that the contract was fulfilled "upon delivery at the port to the trucker." Dkt. No. 13 at 4-5. Defendant thus argues that any obligation to timely return containers arose not out of the bills of lading but "some unidentified contract" that "related solely to non-maritime transportation services" over which the Court does not possess admiralty jurisdiction. *Id*. at 5.

However, the Zim Bill of Lading provided by Plaintiff assigns to the "Merchant"—alleged by Plaintiff to include Defendant (see *infra*)—the responsibility to return any containers released thereto and for demurrage costs. It provides:

> 10. CONTAINERS SUPPLIED BY THE CARRIER
>
> 1. Containers supplied by the Carrier are and shall remain the sole property of the Carrier, without the Merchant having any rights or interest therein. Containers will be put at the disposal of the Merchant subject to the appropriate interchange form

7

> being entered into in respect of such Containers.  Containers released into the care of the Merchant for stuffing, unstuffing, or any other purpose whatsoever shall remain at the sole risk and responsibility of the Merchant until redelivered to the Carrier.  The Merchant shall indemnify the Carrier for all loss of and/or damage and/or delay to such Containers including and for loss of use of the Containers.
>
> . . .
>
> 3.  Container demurrage, Container detention, storage, wharfage and/or pier/quay rent shall be based on Carrier's regular charges, and are payable by the Merchant.
>
> 4. The Merchant is responsible for returning at his risk, expense and responsibility the empty Containers in sound condition with interiors brushed and clean and odor free to the Port of Destination, or Final Destination, if contracted for, or to any other point or place designated by the Carrier, his servants or agents, within the prescribed time. Should a Container not be stripped by the Merchant, or not be returned within the prescribed time and/or in sound condition and/or with the interior brushed and clean, the Merchant shall be liable for all losses and/or damage, liabilities, demurrage, detention, charges, costs, expenses (including but not limited to legal fees), resulting there from [sic].

Dkt. No. 14-3 § 10.

The Zim Bill of Lading further states that the Merchant "is obligated to pay freight," which is defined as "including but not [being] limited to demurrage, surcharges and charges as applicable." *Id.* § 17.

In this case, Plaintiff claims damages for "ocean cargo carriage and/or detention and/or demurrage services." *See* Compl. ¶¶ 16, 18.  Although it is not pled in the Complaint, it appears from the averments in the parties' briefs that Zim's claim arises out of the alleged demurrage and detention costs resulting from the untimely return of containers.  On the face of the Zim Bill of Lading, the "Merchant" is responsible for such costs.  Accordingly, the claim Plaintiff brings appears to arise out of the Zim Bill of Lading, which both parties agree is a maritime contract because the "'principal objective' of the agreement is 'maritime commerce.'" *D'Amico Dry Ltd.*, 886 F.3d at 223 (quoting *Kirby*, 543 U.S. at 24).

It is not relevant to the Court's analysis under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) that Rally Trucking, not Defendant, is the entity that allegedly failed to timely return the containers.  To the extent Defendant is responsible for demurrage and detention costs under the provisions quoted above, liability can attach whether it or its agent, acting on its behalf, caused the costs to materialize in the first instance.  *See Evergreen Line A Joint Serv. Agreement FMC, No. 011982 v. US Dynamics Recycling LLC*, 2018 WL 6313607, at *2 n.2 (S.D.N.Y. June 12, 2018) ("[I]t is well settled that '[t]he act of delegation . . . does not relieve the delegant of the ultimate responsibility to see that the obligation is performed.  If the delegate fails to perform, the delegant remains liable.'") (quoting *Merryman v. Citigroup, Inc.*, 2018 WL 1621495, at *17 (S.D.N.Y. Mar. 22, 2018)); *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 924 (2d Cir. 1977).

Defendant could also be understood to argue, in the alternative, that although the Zim Bill of Lading contains demurrage and container detention provisions, those relate not to the carriage of goods by sea but to non-maritime obligations which are severable, and thus the Court has no admiralty jurisdiction over claims arising thereunder.  *See* Dkt. No. 13 at 5.  This argument also fails, as "[i]t is well-settled that demurrage clauses are 'maritime' in nature because they 'remunerat[e] the shipowner for the detention of its vessel beyond the number of days allowed by the charter-party,' and thus have a sufficient connection to maritime commerce." *Crossbow Cement SA v. Mohamed Ali Saleh Al-Hashedi & Bros.*, 2008 WL 5101180, at *5 (S.D.N.Y. Dec. 4, 2008) (quoting *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 386 n.2 (2d Cir. 2000)); *see also Mediterranean Shipping Co. v. Rose*, 2008 WL 4694758, at *3 (S.D.N.Y. Oct. 23, 2008) ("Admiralty jurisdiction has . . . been found over

9

actions for the recovery of demurrage or detention charges pursuant to a contract for the carriage of goods by water.").[3]

### B.      Failure to State a Claim

Although the Court possesses admiralty jurisdiction to hear claims brought in connection with breach of demurrage and detention clauses in the operative bills of lading, Plaintiff has not adequately pled any such claims in the Complaint.

Under New York law, "there are four elements to a breach of contract claim: '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).  Plaintiff's claim fails at the first element because it does not adequately allege contractual privity between the parties.  *See CDJ Builders Corp. v. Hudson Grp. Const. Corp.*, 889 N.Y.S.2d 64, 65 (2d Dep't 2009) ("Liability for breach of contract does not lie absent proof of a contractual relationship or privity between the parties.") (quoting *Hamlet at Willow Creek Dev. Co., LLC v. Ne. Land Dev. Corp.*, 878 N.Y.S.2d 97, 112 (2d. Dep't

---

[3] It is also not clear whether this approach to maritime jurisdiction—where, on analyzing a "mixed" contract, "i.e., a contract that contain[s] both admiralty and non-admiralty obligations," the Court would exercise jurisdiction only over "maritime obligations that were severable from the non-maritime obligations," *Fireman's Fund*, 822 F.3d at 635—survived the Supreme Court's decision in *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. at 14.  Prior to *Kirby*, the Second Circuit "had held that admiralty jurisdiction was limited to contracts, claims, and services [that were] *purely* maritime," *Fireman's Fund*, 822 F.3d at 635 (internal quotation marks and citation omitted), with two exceptions: (1) for clauses where the claim arose from maritime obligations that are severable from the non-maritime obligations, and (2) where the non-maritime elements of a contract are merely incidental to the maritime ones, *id*.  The Supreme Court's holding in *Kirby* that the inquiry focuses on "whether the principal objective of a contract is maritime commerce," 543 U.S. at 25, caused the Second Circuit to "amend[] [its] jurisprudence on maritime contracts," including abrogating the "incidental" exception, *Fireman's Fund*, 822 F.3d at 635.  The Second Circuit has "not yet addressed the impact of *Kirby* on the severability exception." *Id*.  In any event this is irrelevant to the instant case, as demurrage and detention clauses such as those at issue here have been held to be maritime in nature.  *See supra*.

10

2009)).  The Complaint contains only the conclusory allegations that Plaintiff "transported cargo for the benefit of Defendant during 2018-2019" and that such transport was "performed pursuant to written contract(s) of carriage and/or service contracts between Zim and Defendant, as evidenced by said bills of lading and/or invoices listed in Exhibit 'A.'"  Compl. ¶¶ 6, 11.  Such allegations, without more, are insufficient to establish contractual privity.  *See Alzal Corp. v. I.F.C. Int'l Freight Corp.*, at *7 (E.D.N.Y. Mar. 23, 2015) (conclusory allegations of contract privity insufficient to support a claim where the complaint was "bereft of any factual support for its assertion that [plaintiff and defendant] entered into a contractual agreement"); *@Wireless Enterprises, Inc. v. AI Consulting, LLC*, 2006 WL 3370696, at *5 (W.D.N.Y. Oct. 30, 2006) ("conclusory reference" to "interlocking contracts" between plaintiff and defendant were insufficient to plead privity of contract).

Plaintiff attaches to the Complaint a spreadsheet of what appear to be a list of invoices to "Rally Trucking, Inc.," stating a "balance due" of $71,100.00, Dkt. No. 1-1, but that is not a contract.  It is merely a list of invoices, and there is no clear connection, either from the document itself or from the allegations in the complaint, between Defendant and the "balance" that appears to be "due" from Rally Trucking.  In connection with this motion, Plaintiff attaches the Seth Bill of Lading and the Zim Bill of Lading. Dkt. Nos. 14-2, 14-3.  The Seth Bill of Lading is largely illegible and does not appear to be executed by any party.  Dkt. No. 14-2.  The Zim Bill of Lading also does not appear to be executed by any party.  Dkt. No. 14-3.  *See Alzal Corp.*, 2015 WL 1298585, at *6 ("Generally, 'a nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract.'") (quoting *In re Cavalry Const., Inc.*, 428 B.R. 25, 30 (S.D.N.Y. 2010)); *see also Crabtree v. Tristar Auto. Grp., Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991), *aff'd* 425 F. App'x

11

70 (2d Cir. 2011). It is neither evident from the conclusory allegations in the Complaint nor the bills of lading themselves when or by what transaction Defendant assumed any obligations under either of the bills of lading.

In its opposition brief to the instant motion, Plaintiff averred that "Defendant is a Merchant under the Seth Bill of Lading, since it was the holder, assignee or endorsee of the Seth Bill of Lading." Dkt. No. 14 at 6. Although the Seth Bill of Lading submitted by Defendant is illegible, the Zim Bill of Lading does define "Merchant"—potentially liable under the demurrage and detention clauses quoted *supra*—as "jointly and severally the shipper, the consignee, the holder and any assignee or endorsee of this Bill of Lading." Dkt. No. 14-3 § 1. However, the Complaint itself does not allege that Defendant is the "shipper, the consignee, the holder, [or] any assignee or endorsee" of the Zim Bill of Lading, *id.*, or when or by what transaction it became such a party. Moreover, even where a defendant may fall within the definition of such a broad "Merchant" clause, "a party is not bound to the terms of a bill of lading unless the party consents to be bound." *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 71 (S.D.N.Y.), *adhered to on reconsideration*, 643 F. Supp. 2d 553 (S.D.N.Y. 2009), *and aff'd sub nom.*, *Chem One, Ltd. v. M/V RICKMERS GENOA*, 502 F. App'x 66 (2d Cir. 2012) (citing *Stein Hall & Co. v. S.S. Concordia Viking*, 494 F.2d 287, 291 (2d Cir. 1974)); *see also EIMSKIP v. Atl. Fish Mkt., Inc.*, 417 F.3d 72, 78 (1st Cir. 2005) (noting that the "'merchant' definition in the bill of lading— although it probably embraces [the buyer-plaintiff]—arguably is not binding on someone who was not (in some fashion) a party to the bill of lading or otherwise accepted [its] obligation [s]"). Plaintiff has not pled any factual allegations, necessary to support its claims, that Defendant was a party to or an assignee of either of the bills of lading, that it fell within the Merchant clause of the Zim Bill of Lading, or that it "consent[ed] to be bound" by the terms of any bill of lading.

*See In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d at 71.  Absent such allegations, Plaintiff's first and second claims for breach of contract must be dismissed, along with its sixth claim for attorney's fees, which also relies on the contract alleged.

Plaintiff's remaining claims, for quasi-contract and account stated, must also be dismissed.

"Under New York law, quantum meruit and unjust enrichment claims are analyzed together as a single quasi-contract claim." *Nat'l Util. Serv., Inc. v. Tiffany & Co.*, 2009 WL 755292, at *9 (S.D.N.Y. Mar. 20, 2009) (citing *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005)); *see also Snyder v. Bronfman*, 893 N.Y.S.2d 800, 802 (2009) ("Unjust enrichment and quantum meruit are, in this context, essentially identical claims, and both are claims under a contract implied . . . in law to pay reasonable compensation.") (quoting N.Y. General Obligations Law 5-701(a)(10)).  "In order to recover in quantum meruit under New York law, a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" *Mid-Hudson Catskill Rural Migrant Ministry, Inc.*, 418 F.3d at 175 (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000)).

Plaintiff has not adequately pled any reasonable expectation of compensation.  The Complaint alleges that Plaintiff expected compensation by the counterparties of the bills of lading.  The Complaint is devoid of any allegations that Plaintiff expected compensation other than that to which it was entitled by the terms of the bills of lading and from the parties thereto.  However, Plaintiff has not adequately pled that Defendant is among those counterparties or that there is any basis upon which Plaintiff had a reasonable expectation of compensation from

Defendant rather than a third party.  *See Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 523 (S.D.N.Y. 2017) ("To succeed on a quantum meruit claim, [Plaintiff] must allege that she expected compensation from the Defendants, not from a third party.").  Plaintiff's quasi-contract claims are thus dismissed without prejudice.

Plaintiff's account stated claim must also be dismissed.  "To state a claim for an account stated, the plaintiff must plead that: '(1) an account was presented; (2) it was accepted as correct; and (3) debtor promised to pay the amount stated.'"  *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (quoting *The Haskell Co. v. Radiant Energy Corp.*, 2007 WL 2746903, at *12 (E.D.N.Y. Sept. 19, 2007)).  "In the absence of a claim establishing underlying liability, the account stated claim [is] not viable."  *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 197 (S.D.N.Y. 2009) (quoting *Unclaimed Property Recovery Serv., Inc. v. UBS PaineWebber Inc.*, 870 N.Y.S.2d 361, 362 (1st Dep't 2009)); *see Grinnell v. Ultimate Realty, LLC*, 832 N.Y.S.2d 244, 245 (2d Dep't 2007) ("A cause of action alleging an account stated cannot be utilized simply as another means to attempt to collect under a disputed contract."); *Abbott, Duncan & Wiener v. Ragusa*, 625 N.Y.S.2d 178, 178 (1st Dep't, 1995) ("An account stated is an account, balanced and rendered, with an assent to the balance either express or implied There can be no account stated where no account was presented or where any dispute about the account is shown to have existed.").  For the reasons provided above, there is no well pled allegation of any indebtedness of Defendant to Plaintiff.  Thus, the claim for account stated is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is DENIED.  Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED without prejudice.  Plaintiff may file an amended complaint

within 30 days of the date of this order, or else the case will be closed.  The Clerk of Court is respectfully directed to close Dkt. No. 12.

SO ORDERED.

Dated: July 27, 2021
       New York, New York                          LEWIS J. LIMAN
                                              United States District Judge