```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
ZIM AMERICAN INTEGRATED SHIPPING                                 :
SERVICES CO., LLC,                                               :
                                                                 :
                              Plaintiff,                         :         20-cv-4838 (LJL)
                                                                 :
                -v-                                              :         OPINION AND ORDER
                                                                 :
SPORTSWEAR GROUP, LLC,                                           :
                                                                 :
                              Defendant.                         :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/18/2021

LEWIS J. LIMAN, United States District Judge:

Defendant Sportswear Group, LLC ("Sportswear Group" or "Defendant") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the amended complaint of plaintiff Zim American Integrated Shipping Services Co., LLC ("Zim" or "Plaintiff") for failure to state a claim upon which relief can be granted. Dkt. No. 18.

For the following reasons, Defendant's motion to dismiss is granted.

## BACKGROUND

The Court assumes familiarity with its prior opinion in this case. *See Zim Am. Integrated Shipping Servs. Co., LLC v. Sportswear Grp., LLC*, 2021 WL 3173712 (S.D.N.Y. July 27, 2021).

Zim, as agent for Zim Integrated Shipping Services Ltd. and Seth Shipping (S) Ltd. ("Seth Shipping"), is a common carrier by water, *inter alia*, in the interstate and foreign commerce of the United States as defined in the Shipping Act of 1984, 46 U.S.C. § 40101 *et seq.*, and was a common carrier for the benefit of Sportswear Group during 2018-2019. Dkt. No. 17 ("Amended Complaint" or "Am. Compl.") ¶¶ 4, 6. Sportswear Group is a seller of women's

apparel. Dkt. No. 13-1 ("Shaalo Decl.") ¶ 2.[1] Sportswear Group purchased several shipments of goods from factories in Bangladesh. *Id.* As part of the sales agreements with those factories, the factories were obligated to hire and pay to have the goods shipped to the United States. *Id.* ¶ 3. The factories shipped the goods with Seth Shipping and paid ocean freight in advance. *Id.* Seth Shipping issued original negotiable bills of lading to the factories and transported the shipments from an ocean port in Bangladesh to the Port of New York. *Id.* ¶¶ 3-4; Dkt. No. 17-1.

The relevant bills of lading, Dkt. No. 17-1, and Seth Shipping's bill of lading terms and conditions, Dkt. No. 21-1, are incorporated by reference in the Amended Complaint.[2] On each bill of lading, the named "shipper" is one of the Bangladeshi factories from which Sportswear Group purchased goods. Dkt. No. 17-1. Each bill of lading included Sportswear Group as the

---

[1] For purposes of stating the background of the case, the Court draws facts not only from the Amended Complaint but from the record in this case. However, in analyzing the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court considers only the allegations contained or incorporated by reference in the Amended Complaint.

[2] Zim attached the bills of lading, Dkt. No. 17-1, and the "Bill of Lading Terms and Conditions" for Zim Integrated Shipping Services Ltd., Dkt. No. 17-2, to its Amended Complaint. Zim did not attach Seth Shipping's bill of lading terms and conditions. Zim noted that while the bills of lading in this case "were rendered by Seth Shipping, which is a wholly owned subsidiary of Zim," "[t]he Seth bill of lading terms and conditions are identical or virtually identical to the Zim bill of lading terms and conditions." Am. Compl. at 3 n.3. After Sportswear Group pointed out that Zim had not attached Seth Shipping's terms and conditions, Zim supplied a legible copy of this document. Dkt. No. 21-1; *see also* Dkt. No. 20 at 7-8. Sportswear Group asks the Court to "not now accept the very late filed terms and conditions" as "[i]t boggles the mind how Seth's counsel would not have had access to this important document before now." Dkt. No. 23 at 2 n.1. It is true that Zim has not explained why it did not attach this document to its Amended Complaint. But given the preference for deciding cases on the merits and the fact that Sportswear Group has had a chance to address this document in its reply, the Court will consider Seth Shipping's terms and conditions on this motion. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) ("[W]e have expressed a strong 'preference for resolving disputes on the merits.'") (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001))). The Court also notes that Sportswear Group acknowledges the document's relevance and does not dispute the authenticity or accuracy of the document. *See Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 223 (S.D.N.Y. 2018). The Court does not consider the last two bills of lading, Dkt. No. 17-1 at 39-42, which are unrelated to the case at hand and which Zim admits it inadvertently and erroneously included, Dkt. No. 20 at 8 n.2.

"notify" party.³  *Id.*  As indicated in the "consignee" field, each bill of lading was drawn to the order of the shipper's bank.⁴  *Id.*; Am. Compl. ¶ 6.  The bank held the funds paid by Sportswear Group for the goods, pending the safe delivery of the cargo and the receipt of the endorsed bill of lading from the named shipper.⁵  Am. Compl. ¶ 6.  Pursuant to the transaction, the shipper would give the "executed/endorsed" bill of lading to the bank in exchange for the money Sportswear Group tendered to the bank.  *Id.*  The bank would then turn over the "executed/endorsed" bill of lading to Sportswear Group.  *Id.*  When the shipments arrived at the Port of New York, Sportswear Group would provide the original bills of lading to Seth Shipping and the goods would be delivered to Rally Trucking, a trucking company hired by Sportswear Group to transport the cargo from the port to Sportswear Group's warehouse.  Shaalo Decl. ¶ 5.  Sportswear Group was the ultimate consumer and owner of the goods transported under the bills of lading.  Am. Compl. ¶ 6.  Although not detailed in the Amended Complaint, from the record in this case, it appears that Zim's theory is that Rally Trucking failed to timely return the empty

---

³ The notify party is the "the party to be notified when the goods arrive at their destination." *Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, 77 F. Supp. 3d 364, 367 n.3 (S.D.N.Y. 2015).

⁴ "The consignee is the receiver of the shipment." *OOCL (USA) Corp. v. Transco Shipping Corp.*, 2015 WL 1069339, at *1 (S.D.N.Y. Mar. 11, 2015) (citing *Black's Law Dictionary* 373 (10th ed. 2014)).  And "[a]n order bill of lading is negotiable by endorsement of the order party and delivery of the bill."  Bills of lading: applicable laws, function, and use, 1 Admiralty & Mar. Law § 10:11 (6th ed.).

⁵ It is not atypical in international shipping for a bank to be listed as consignee.  As explained by Williston on Contracts:  "The negotiability of a maritime bill has been and continues to be of vital importance in the financing and movement of goods in international commerce.  For example, a seller of goods may receive money due on goods before their actual arrival at the ultimate destination by the delivery of the bill to a local bank which, in turn, negotiates the bill at the buyer's bank.  In addition to obviating the inconveniences of long transit time, the seller is protected against the insolvency of the buyer or the occurrence of unexpected events that hinder the buyer's ability to make payment.  The buyer of merchandise also receives benefits, in that the buyer can finance the purchase through a bank prior to the receipt of the goods.  Even though the goods are in transit, the buyer's bank has them as security on its loan as long as the bank or one of its agents holds the bill of lading."  Negotiability, 22 Williston on Contracts § 58:25 (4th ed.).

shipping containers used to transport the cargo, resulting in damages. *See Zim Am. Integrated Shipping*, 2021 WL 3173712, at *2.

The terms and conditions of Seth Shipping's bills of lading provide that "[t]he contract evidenced by this Bill of Lading is between the Carrier and the Merchant." Dkt. No. 21-1 § 2.1. Carrier is defined as Seth Shipping, and Merchant "means jointly and severally the shipper, the consignee, the holder and any assignee or endorsee of this Bill of Lading, and/or any one acting on behalf of such persons." *Id.* § 1. "Each and every party defined as 'Merchant' in Clause 1 hereof is jointly and severally liable towards the Carrier for fulfillment of the various undertakings, responsibilities and liabilities of the Merchant as detailed hereunder or in connection herewith." *Id.* § 2.1. Sections 10 and 17 of the terms and conditions provide that the Merchant is liable for certain demurrage, detention, and freight charges.[6] *Id.* §§ 10, 17.

Zim alleges that, pursuant to the transaction, Sportswear Group was "the holder, assignee or endorsee of the bills of lading" under the definition of the term Merchant and thus "was made a party to the bill of lading, the contract of carriage between the parties, and is liable thereunder to Plaintiff for any unpaid freight, detention, demurrage or other charges due pursuant to the bills of lading." Am. Compl. ¶ 6. Zim further alleges that, "[a]s notify party," Sportswear Group

---

[6] Section 10.1 provides in part that "[t]he Merchant shall indemnify the Carrier for all loss of and/or damage and/or delay to such Containers including and for loss of use of the Containers." *Id.* § 10.1. Section 10.4 provides in part: "Should a Container not be stripped by the Merchant, or not be returned within the prescribed time and/or in sound condition and/or with the interior brushed and clean, the Merchant shall be liable for all losses and/or damage, liabilities, demurrage, detention, charges, costs, expenses (including but not limited to legal fees), resulting there from." *Id.* § 10.4. Section 17.1 provides in part: "The Merchant is obligated to pay full freight." *Id.* § 17.1. Section 17.3 provides in part: "All dues, taxes or charges or other expenses in connection with the Goods and all additional amounts for which the Merchant is liable to the Carrier under this Bill of Lading shall be paid by the Merchant on demand." *Id.* § 17.3.

4

"was 'acting on behalf of such [other] persons'" and "became party to the contract of carriage pursuant to the definition of 'Merchant'" in the terms and conditions of the bills of lading. *Id.*

Zim raises six claims in its Amended Complaint. First, Zim brings claims for money due under tariff, service contracts and/or bills of lading ("First Count"); breach of written contract of carriage or bill of lading ("Second Count"); and attorneys' fees ("Sixth Count"). Am. Compl. ¶¶ 4-14, 22-23. Zim alleges that Sportswear Group is liable "for any unpaid freight, detention, demurrage or other charges due pursuant to the bills of lading." *Id.* ¶ 6. Zim alleges that it has fully performed its obligations under the bills of lading, *id.* ¶¶ 6, 12, but that Sportswear Group has knowingly and willfully failed and refused to pay Zim the full amount due, *id.* ¶¶ 8, 13. Zim thus alleges that Sportswear Group is liable to Zim in the amount of $71,100 plus reasonable attorneys' fees and interest. *Id.* ¶¶ 9, 14, 23. Next, Zim brings claims for unjust enrichment ("Third Count") and quantum meruit ("Fourth Count"). *Id.* ¶¶ 15-18. Zim alleges that it had a reasonable expectation that it would be paid its freight, detention, or demurrage charges and that Sportswear Group, as ultimate receiver of the cargo, received the benefit of Zim's services. *Id.* ¶¶ 16, 18. Finally, Zim brings a claim for account stated ("Fifth Count"), alleging that it presented the account to Sportswear Group, which "impliedly accepted it as correct," and "assented or promised to be liable for any unpaid freight, detention, demurrage or other charges." *Id.* ¶ 21.

**PROCEDURAL HISTORY**

Zim's original complaint in this case brought the same six claims alleged in its Amended Complaint. Dkt. No. 1. Attached to the original complaint was a spreadsheet of what appeared to be a list of invoices to Rally Trucking, Inc., stating a balance due of $71,100. Dkt. No. 1-1. In connection with its opposition to Sportswear Group's initial motion to dismiss, Zim attached the terms and conditions of the Seth Shipping bill of lading and of the Zim bill of lading, but the

terms and conditions of the Seth Shipping bill of lading was in tiny print and mostly illegible. Dkt. Nos. 14-2, 14-3.  Based on the original complaint and the documents incorporated by reference, the Court held that it had admiralty jurisdiction over Zim's claims but dismissed the six claims without prejudice for failure to state a claim upon which relief could be granted.  *See Zim Am. Integrated Shipping*, 2021 WL 3173712, at *3-7.  The Court permitted Zim to amend its complaint.  *Id.* at *7.

Zim filed an Amended Complaint and, this time, attached the relevant bills of lading. Am. Compl.; Dkt. No. 17-1.  Sportswear Group moved to dismiss the Amended Complaint for failure to state a claim.  Dkt. No. 18.  Zim filed a memorandum of law in opposition, Dkt. No. 20, and submitted a legible copy of the terms and conditions of the Seth Shipping bill of lading, Dkt. No. 21-1.  Sportswear Group then filed its reply.  Dkt. No. 23.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that

discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

The Court addresses Zim's three sets of claims in turn.

**I.     The Contractual Claims (i.e., the First, Second, and Sixth Counts) Must Be Dismissed**

The Court's previous opinion in this case dismissed Zim's contractual claims because Zim did not adequately allege contractual privity between the parties. *Zim Am. Integrated Shipping*, 2021 WL 3173712, at *5. The original complaint "contain[ed] only the conclusory allegations that Plaintiff 'transported cargo for the benefit of Defendant during 2018-2019' and that such transport was 'performed pursuant to written contract(s) of carriage and/or service contracts between Zim and Defendant, as evidenced by said bills of lading and/or invoices listed in Exhibit A.'" *Id.* (quoting Dkt. No. 1 ¶¶ 6, 11). Exhibit A contained only a spreadsheet of invoices and no bills of lading. The Court also noted that while Zim in its briefing averred that Sportswear Group was a Merchant under the bills of lading as the holder, assignee, or endorsee, the complaint itself did not allege that Sportswear Group was the shipper, the consignee, the holder, or any assignee or endorsee of the bills of lading or when or by what transaction it became such a party. *Id.* at *6. The Court further concluded that "even where a defendant may fall within the definition of such a broad 'Merchant' clause, 'a party is not bound to the terms of a bill of lading unless the party consents to be bound.'" *Id.* (quoting *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 71 (S.D.N.Y.), *adhered to on reconsideration*, 643 F. Supp. 2d 553 (S.D.N.Y. 2009), *and aff'd sub. nom.*, *Chem One, Ltd. v. M/V RICKMERS GENOA*, 502 F. App'x 66 (2d Cir. 2012)). Absent such allegations, the Court held that Zim's first and second

7

claims for breach of contract and its sixth claim for attorneys' fees, which relied on the contract alleged, must be dismissed. *Id.*

In response to the Court's opinion, Zim re-pleaded. First, Zim added allegations describing the bills of lading and describing the relationships between the parties involved. Am. Compl. ¶ 6. Zim alleges that Sportswear Group became a party to the contract of carriage either as "the holder, assignee or endorsee of the bills of lading" pursuant to these transactions or as the notify party "acting on behalf of such [other] persons" under the definition of the term Merchant. *Id.* To its Amended Complaint, Zim also attaches the relevant bills of lading, which were not previously submitted to the Court. Dkt. No. 17-1. In addition, Zim now has provided a legible copy of the terms and conditions of the Seth Shipping bill of lading. Dkt. No. 21-1.

On its motion to dismiss the Amended Complaint, Sportswear Group argues that Zim's contractual claims should be dismissed because Zim again fails to plead any facts to establish contractual privity between the parties. Dkt. No. 19 at 2. Sportswear Group contends that Zim added only conclusory allegations regarding how Sportswear Group became a party to the contract of carriage under the definition of Merchant in the bill of lading. *Id.* at 2-3. Sportswear Group also argues that absent any allegations to support claims that it consented to be bound to the terms of the bills of lading, the breach of contract claims must be dismissed. *Id.* at 3. In response, Zim argues that it has adequately pleaded facts showing how and why Zim and Sportswear Group were in contractual privity and that Sportswear Group is contractually liable under the bill of lading as a Merchant. Dkt. No. 20 at 6.

Zim has plausibly pleaded facts sufficient to support that Sportswear Group falls under the definition of Merchant in the terms and conditions of Seth Shipping's bill of lading. Merchant "means jointly and severally the shipper, the consignee, the holder and any assignee or

8

endorsee of this Bill of Lading, and/or any one acting on behalf of such persons." Dkt. No. 21-1 § 1.  Zim alleges that once the shipper exchanged the "executed/endorsed" bill of lading for the money tendered at the bank, the bank would then turn over the "executed/endorsed" bill of lading to Sportswear Group.[7]  Am. Compl. ¶ 6.  Though they are not spelled out in detail, the facts provided in the Amended Complaint are sufficient to infer that Sportswear Group became the holder or endorsee of the bills of lading and thus falls within the definition of Merchant under the bills of lading.

Sportswear Group's alleged status as a Merchant, however, does not alone make Sportswear Group a party to the bills of lading.  "A bill of lading for ocean carriage is a maritime contract."  *Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, 77 F. Supp. 3d 364, 373 (S.D.N.Y. 2015) (quoting *Thypin Steel Co. v. Asoma Corp.*, 215 F.3d 273, 277 (2d Cir. 2000)).  The Second Circuit "has reaffirmed the common law principle that a party is not bound to the terms of a bill of lading unless the party consents to be bound."  *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d at 71 (citing *Stein Hall & Co. v. S.S. Concordia Viking*, 494 F.2d 287, 291 (2d Cir. 1974)).  Other courts have similarly held that "[a] party cannot unilaterally employ definitions to bind another [party to] . . . provisions to which the other [party] has not

---

[7] Alternatively, Zim alleges that, "[a]s notify party" on the bills of lading, Sportswear Group "was 'acting on behalf of such [other] persons'" defined as Merchant.  Am. Compl. ¶ 6.  However, Zim alleges no facts supporting why Sportswear Group's designation as notify party means that Sportswear Group was acting on behalf of the shipper, the consignee, the holder, or any assignee or endorsee of the bill of lading.  *See Dynamic Worldwide Logistics*, 77 F. Supp. 3d at 367 n.3 ("The mere fact that a party 'was listed in the bill of lading as the party to be notified raises no presumption that he was the intended consignee.'" (quoting *Columbia Trading Corp. v. Moore-McCormack Lines, Inc.*, 374 F.2d 864, 865 (2d Cir. 1967))); *Saray Dokum v. Madeni Aksam Sanayi Turizm A.S.*, 2021 WL 1199470, at *11 (S.D.N.Y. Mar. 30, 2021) ("[C]ase law confirms that a 'notify' status generally confers no rights upon a party." (citations omitted)).  Absent additional allegations, Zim has not shown why Sportswear Group falls under the definition of Merchant given its status as notify party.

9

consented to be bound." *Id.* (alterations in original) (quoting *United States v. Waterman S.S. Corp.*, 471 F.2d 186, 189 n.4 (5th Cir. 1973)); *see also Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, 696 F.3d 647, 655 (7th Cir. 2012) ("Although a bill of lading is a contract between a shipper and a carrier, it can nonetheless bind a non-party buyer *where there is consent to be bound*." (emphasis added)). And although intended third-party beneficiaries, such as a consignee, to a bill of lading may enforce contract terms in their favor, "the mere fact that a party is a beneficiary does not create contractual obligations for that beneficiary." *Dynamic Worldwide Logistics*, 77 F. Supp. 3d at 374. "Contractual obligations cannot be imposed on an intended beneficiary absent a showing that the third party manifested acceptance to be bound or the existence of an agency relationship with one of the contracting parties." *Id.*

Courts agree that one way for a party to manifest acceptance to be bound by the terms of a bill of lading is for that party to bring suit under it. *See, e.g.*, *A.P. Moller-Maersk A/S v. Ocean Express Miami*, 550 F. Supp. 2d 454, 464 (S.D.N.Y. 2008) (stating that the rule that a party "had accepted the carrier's bill of lading by suing on it" was "generally accepted by courts in this and other circuits"); *All Pacific Trading, Inc. v. Vessel M/V HANJIN YOSU*, 7 F.3d 1427, 1432 (9th Cir. 1993) ("At the very least, Plaintiff's initiation of this suit constituted acceptance of the terms of the Hanjin bills of lading."); *Kawasaki Kisen Kaisha*, 696 F.3d at 655 ("A non-party buyer may accept the terms of the bill of lading where it files a lawsuit under the bill, and attempts to benefit from its terms." (citing *Steel Warehouse Co. v. Abalone Shipping Ltd.*, 141 F.3d 234, 237 (5th Cir. 1998))).

A consignee can also become a party to a negotiable bill of lading and thereby assume obligations under it by presenting the negotiable bill of lading to the carrier and accepting the goods under it. The consignee is thereby assumed to have adopted the terms of the bill of lading

and manifested an intent to be bound by them. *See Neilsen v. Jesup*, 30 F. 138, 139 (S.D.N.Y. 1887) ("The general rule undoubtably is that the consignee and indorsee of the bill of lading who is owner of the goods and of the bill of lading, and who accepts the goods under the bill of lading, is bound by its terms."); *OOCL (USA) Inc. v. Transco Shipping Corp.*, 2015 WL 9460565, at *4 (S.D.N.Y. Dec. 23, 2015) ("Defendant [consignee] accepted the bills of lading and became a party to each when it signed, endorsed, and presented them to Plaintiff [carrier]."); *see also Pac. Coast Fruit Dist. v. Pennsylvania R.R. Co.*, 217 F.2d 273, 275 (9th Cir. 1954) (stating that "[o]ther attending circumstances or factors, such as *receipt and acceptance of the shipment* or exercise of control over future movements, are necessary to create liability [for the consignee] for the payment of charges" (emphasis added)); *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 282 (6th Cir. 2021) (White, J., dissenting) (discussing how "a consignee, owner, and beneficiary *who also* presented the bills and accepted the goods" had demonstrated consent to the terms of a carrier's bills of lading).[8]  "[W]hat matters when dealing with a negotiable bill of lading is who physically presents the bill and accepts delivery of the cargo under it." *Ingram Barge Co.*, 3 F.4th at 281 (White, J., dissenting) (citing *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 481 (2d Cir. 1985)); *see also Neilsen*, 30 F. at 139 ("The vessel is not bound to look beyond the owner and holder of the bill of lading, because he has the right to control the delivery and the acceptance of the goods under it.").  However, absent this act of presenting a negotiable bill of lading and accepting the goods under it, a person cannot be made party to a bill of lading and deemed to have adopted its terms simply because the persons who are parties have listed it as a consignee, endorsee, or other

---

[8] *But see Ingram Barge Co.*, 3 F.4th at 279-80 (holding that ultimate consignee who accepted the goods had not consented to the bills of lading).

11

beneficiary. *See Dynamic Worldwide Logistics*, 77 F. Supp. 3d at 375 ("The mere fact that a party is a consignee or third-party beneficiary is insufficient to warrant a finding that [the defendant] was bound by the terms contained in the bills of lading."); *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d at 72-73 ("While EMS Group, as the cargo purchaser and ultimate consignee, may certainly have been an intended third-party beneficiary, that status alone is insufficient to warrant a finding that ESM Group was bound to comply with the Merchant's obligations as described in both bills of lading."); *see also Pac. Coast Fruit Dist.*, 217 F.2d at 275 ("There is no doubt that the mere designation of a party as consignee in a bill-of-lading, without more, is insufficient to entail liability for the payment of freight charges."). A contrary view would run afoul of the general principle that a party is not bound by a contract unless it has manifested its intent to be bound. *See Stein Hall*, 494 F.2d at 291.

Here, parts of the record and briefing in this case suggest that Sportswear Group presented the bills of lading to Seth Shipping and accepted the goods and thereby assumed obligations under the bills of lading. *See, e.g.*, Shaalo Decl. ¶ 5; Dkt. No. 13 at 2; Dkt. No. 14 at 6 n.1. However, such allegations are not included in the Amended Complaint or the documents incorporated by reference. *See* Am. Compl.; Dkt. Nos. 17-1, 21-1. And "[i]n adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).

The Amended Complaint itself does not allege facts to show that Sportswear Group has consented to be bound by the terms of the bills of lading. It does not allege that an agency relationship existed pursuant to which Sportwear Group would be bound. The contracting

parties to the bills of lading here were the shipper (i.e., the Bangladeshi factories) and the carrier (i.e., Seth Shipping). *See Jones v. the Flying Clipper*, 116 F. Supp. 386, 388 (S.D.N.Y. 1953) ("The bill of lading is the contract between the shipper and the carrier."). And there are no allegations that there was an agency relationship between Sportswear Group and one of these contracting parties. Sportswear Group is also not suing under the bills of lading or attempting to benefit from their terms. *Cf. In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d at 72 ("Some courts have held that when a third-party who falls within a Merchant Clause sues on a bill of lading, the third-party in effect accepts the bill of lading and becomes a party to the contract.").

There are also no allegations in the Amended Complaint itself that Sportswear Group, as holder or endorsee of the bills of lading, presented the bills of lading to Seth Shipping and accepted the goods under them. Sportswear Group's mere status as a Merchant under the bills of lading cannot alone manifest acceptance of the terms of the bills of lading as Zim "cannot unilaterally employ definitions to bind" Sportswear Group to "provisions to which [it] has not consented to be bound." *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d at 71. The court in *In re M/V Rickmers Genoa Litigation* held that although the buyer of the goods "likely falls within the scope of [the] Merchant Clauses" of the two bills of lading, there was no evidence that it "consented to be bound by either bill of lading." *Id.* at 72. As the goods in that case were lost in an explosion aboard the ship before it arrived, *id.* at 62, the buyer there also never presented the bills of lading and accepted the goods. Thus, without allegations of presentation of the bills of lading and acceptance of the goods or other allegations to show that Sportswear Group consented to be bound by the bills of lading, Zim has not alleged that there was contractual privity between Zim and Sportswear Group.

13

Zim relies on two cases to support its argument, but neither helps its cause on the Amended Complaint. First, Zim argues that in *A.P. Moller-Maersk A/S v. Taiwan Glass USA Sales Corp.*, 663 F. Supp. 2d 1011 (D. Or. 2009), the court held that an expressly named consignee on the bills of lading can become liable to an ocean carrier for freight-related charges. Dkt. No. 20 at 8-9. But contrary to the allegations in Zim's Amended Complaint, in *A.P. Moller-Maeersk A/S*, there were "no factual issues concerning [the consignee's] acceptance of the bills of lading" and "[c]ompany employees reviewed and acted upon each one." *A.P. Moller-Maersk A/S*, 663 F. Supp. 2d at 1015. Next, Zim argues that *OOCL (USA) Inc. v. Transco Shipping Corp.*, 2015 WL 9460565 (S.D.N.Y. Dec. 23, 2015), is on all fours with the case at bar. Dkt. No. 20 at 9-10. The court in *OOCL* held that the defendant consignee under an ocean bill of lading was liable to the plaintiff ocean carrier for unpaid detention and demurrage charges. *OOCL*, 2015 WL 9460565, at *6. But the court there found that the consignee "accepted the bills of lading and became a party to each when it signed, endorsed, *and presented them* to [the carrier]." *Id.* at *4 (emphasis added). As discussed, Zim's pleadings do not allege that Sportswear Group ever presented the bills of lading to Seth Shipping and accepted the goods thereunder. Absent such allegations, Zim has not shown that Sportswear Group consented to be bound by the bills of lading.

For these reasons, the Amended Complaint has not alleged contractual privity, and the First and Second Counts related to the bills of lading and the Sixth Count for attorneys' fees, based on the contract alleged, must be dismissed.

**II.   The Claims in Quasi-Contract (i.e., the Third and Fourth Counts) Must Be Dismissed**

The Court's prior opinion in this case dismissed Zim's quasi-contract claims because Zim did not adequately plead a reasonable expectation of compensation other than that to which it

14

was entitled by the terms of the bills of lading and from the parties thereto, and did not allege that Sportswear Group was among those counterparties. *Zim Am. Integrated Shipping*, 2021 WL 3173712, at *7. Upon re-pleading, Zim added allegations that it "had a reasonable expectation that it would be paid its freight, detention or demurrage charges by any one of the parties defined as a Merchant" and that, "as ultimate receiver of the cargo, Defendant received the benefit of Plaintiff's services." Am. Compl. ¶¶ 16, 18.

In moving to dismiss the quasi-contract claims, Sportswear Group argues that Zim's expectation to be paid from any party defined as a Merchant "is not sufficient to demonstrate that it had a reasonable expectation that it would be paid by Sportswear Group." Dkt. No. 19 at 4. Sportswear Group also argues that any arguments related to non-maritime, surface transportation practice are not relevant. Dkt. No. 23 at 3. Zim responds that, as the ultimate recipient of the goods, Sportswear Group is liable for freight and related charges since it received the benefit of Zim's ocean transportation services. Dkt. No. 20 at 12.

Zim's unjust enrichment and quantum meruit claims rise and fall together. The Court "analyze[s] quantum meruit and unjust enrichment together as a single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005); *see also Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991) ("[U]njust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of such a contract."), *rev'd on other grounds,* 959 F.2d 425 (2d Cir. 1992). To prevail on a claim for unjust enrichment under New York law, a plaintiff must demonstrate "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (quoting *Beth Isr. Med.*

15

*Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)). "Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016) (internal quotation marks omitted). "[A] 'plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party.'" *Cohen v. BMW Invs. L.P.*, 144 F. Supp. 3d 492, 501-02 (S.D.N.Y. 2015) (quoting *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012)). "Although 'a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment, there must exist a relationship or connection between the parties that is not too attenuated.'" *Id.* at 502 (quoting *Georgia Malone*, 973 N.E.2d at 746). A claim for unjust enrichment may be dismissed "where the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement." *Georgia Malone*, 973 N.E.2d at 747 (quoting *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1111 (N.Y. 2011)).

"In order to recover in quantum meruit under New York law, a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" *Mid-Hudson Catskill*, 418 F.3d at 175 (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000)). "[T]he claimant must have a reasonable expectancy of receiving compensation." *Int'l Paper Co. v. Suwyn*, 978 F. Supp. 506, 513 (S.D.N.Y. 1997).

The Amended Complaint does not allege that the parties had a relationship that could have caused reliance or inducement. Though it alleges that Sportswear Group was the ultimate

receiver of the cargo, Am. Compl. ¶¶ 16, 18, it does not provide facts alleging that the parties had any dealings with each other or any contact regarding the transaction giving rise to the claims in quasi-contract. *See Cohen*, 144 F. Supp. 3d at 501 ("In upholding a dismissal of an unjust enrichment claim, the New York Court of Appeals has held that a relationship is too attenuated where the parties 'simply had no dealings with each other,' and the complaint did not allege that the parties 'had any contact regarding the purchase transaction.'" (quoting *Georgia Malone*, 973 N.E.2d at 747)). The claims in quasi-contract are thus dismissed.

### III.     The Claim for Account Stated (i.e., the Fifth Count) Must Be Dismissed

As explained in the Court's prior opinion, "[t]o state a claim for an account stated, the plaintiff must plead that: '(1) an account was presented; (2) it was accepted as correct; and (3) debtor promised to pay the amount stated.'" *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (quoting *The Haskell Co. v. Radiant Energy Corp.*, 2007 WL 2746903, at *12 (E.D.N.Y. Sept. 19, 2007)). "In the absence of a claim establishing underlying liability, the account stated claim [is] not viable." *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 197 (S.D.N.Y. 2009) (quoting *Unclaimed Property Recovery Serv., Inc. v. UBS PaineWebber Inc.*, 870 N.Y.S.2d 361, 362 (1st Dep't 2009)); *see also Grinnell v. Ultimate Realty, LLC*, 832 N.Y.S.2d 244, 245 (2d Dep't 2007) ("A cause of action alleging an account stated cannot be utilized simply as another means to attempt to collect under a disputed contract."); *Abbott, Duncan & Wiener v. Ragusa*, 625 N.Y.S.2d 178, 178 (1st Dep't 1995) ("An account stated is an account, balanced and rendered, with an assent to the balance either express or implied. There can be no account stated where no account was presented or where any dispute about the account is shown to have existed.").

For the reasons provided, Zim has not alleged a claim establishing underlying liability, and thus its account stated claim must be dismissed.

### IV. Leave to Re-Plead

Zim requests leave to re-plead if the Court finds the Amended Complaint deficient. Dkt. No. 20 at 13. Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading . . . by leave of the court . . . and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (discussing how the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)"). "[A] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and "[t]he decision to grant leave to amend is within the sound discretion of the trial court," *Bay Harbour Mgmt. LLC v. Carothers*, 474 F. Supp. 2d 501, 502 (S.D.N.Y. 2007) (citation omitted). Zim has indicated through its papers in opposition to the motion that it may have facts sufficient to support its claim that were not pleaded. Accordingly, even though Zim has already had a chance to amend its complaint once after it was previously dismissed, the Court will permit Zim one last opportunity to re-plead to address the deficiencies discussed in this opinion.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the Amended Complaint is GRANTED, and the Amended Complaint is dismissed without prejudice. If amended pleadings are not filed on the docket within 30 days of the date of this order, the case will be closed.

The Clerk of Court is respectfully directed to close Dkt. No. 18.

SO ORDERED.

Dated: November 18, 2021
      New York, New York

                                               LEWIS J. LIMAN
                                     United States District Judge